The first case today is People v. Deontay Johnson for the appellant, Ms. Boyd v. Ms. Brooks. You may proceed. May it please the Court, Counsel. My name is Jackie Bullard and I represent the minor defendant in this case, Deontay Johnson. My intention is to focus, during oral argument, on the deficiencies in the transfer hearing that occurred and the sentencing problems that are in this case, and to rely on the briefs, although I'm more than happy to discuss trial issues or whatever the Court is interested in doing. Few decisions are more profound for a trial judge than deciding to take one of the state's youngest offenders and transfer that child to adult court. And it is for that reason that both the legislature and Illinois courts provide for some fairly stringent requirements for those transfer hearings. The legislature in its statutory scheme sets forth about a dozen factors that a court is required to consider before transferring the minor, and courts have subsequently interpreted those statutory requirements as requiring evidence on the record that the trial court has considered each of those factors in order to satisfy due process. There are three particular sections of the transfer statute that are relevant in this case. The first is the advantage of treatment within the juvenile justice system, including whether there are facilities or programs, or both, particularly available in the juvenile justice system. Whether there is a reasonable likelihood that the minor can be rehabilitated before the expiration of juvenile court jurisdiction, and the adequacy of punishment. There is also a fourth factor that is an issue in this case, and that is the length of the sentence that the minor would face if transferred to adult court. As a matter of shorthand, this particular factor has been referred to as a non-statutory factor. But in effect, the sentence that a minor will face in juvenile court versus the sentence that a minor will face in adult court relates directly to these statutory factors, in particular the adequacy of punishment and services. If there is not evidence of sentences in both systems, it is impossible to make that determination. In terms of talking about the reasonable likelihood of rehabilitation, a court has to be presented with evidence of what those particular sentences are. In this case, wouldn't a trial court know what the possible sentences are? Ordinarily, a court is presumed to know the law. But in this body of case law that surrounds transfer proceedings, the Supreme Court has been very clear that there has to be evidence in order to satisfy due process, primarily because of the gravity of this decision. And People v. Clark is instructive. In People v. Clark, the minor was subject to automatic life sentences if he were transferred to adult court. It was based on a double murder. There was no discretion that was available to the trial court. The law was very straightforward about what the sentences were in Clark. But yet the Supreme Court says, when we're making these types of decisions about children, we have to be, as reviewing courts, have to be certain that trial courts were absolutely aware of these sentencing ranges and considered them. And so in Clark, one of the reasons that case was sent back for a new transfer hearing included the fact that there was no evidence that the minor would face mandatory natural life if he were transferred under the state of the law at the time. In this case, Deontay was not subject to automatic life without parole in the classic sense. But what he was subject to was de facto life. He was subject to a potential sentence that in effect exceeded his lifespan. The potential range was 90 years. The maximum for murder at 60 years plus 30 years, the maximum for attempt. And those sentences were mandatorily consecutive because one of the offenses was murder. So Deontay was in effect facing a potential life sentence in this case. Yet no mention was made of that at the transfer hearing. In addition, there was absolutely no information introduced at the transfer hearing about the available options to the minor in this case. The state presented no evidence other than a little bit of testimony from Deontay's, the officer who managed Deontay's supervision for his criminal damage to property juvenile case. And then defense counsel introduced some testimony from a probation officer about the options that are available to a child if placed on probation in Macon County. Residential placement, mental health counseling, probation supervision. The problem is in this case that Deontay wasn't eligible for any of those services if he were convicted of first degree murder. If he were convicted of first degree murder, the Juvenile Court Act requires that he be held in a Department of Juvenile Justice facility for a minimum of five years and up to 21 years. So in this case there was no information at all presented on what the potential services were in juvenile court. In addition to not talking about what the actual sentence would have been in juvenile court, there was absolutely no comparison between what would happen to Deontay if he remained in juvenile court and what would happen in an adult facility. And the research is extraordinarily clear that there are life-altering consequences between a placement in a juvenile facility and a placement in an adult facility. In a juvenile facility, a Juvenile Department of Juvenile Justice facility is focused on rehabilitative services to change the minor's behavior. It is staffed by staff members who are trained in how to appropriately deal with juveniles and keep juveniles safe. In contrast, in an adult prison, children are at an extraordinary risk for being victims of sexual assault, having mental health issues aggravated, being victims of physical assault by their inmates. Children don't go to adult prisons. The way the statutory scheme is created under the Juvenile Court Act is that juveniles are eligible to be transferred to an adult facility at age 17. So even though Deontay isn't put in an adult facility at age 14 or 15 or 16, at 17 he's eligible for transfer with court approval. At 18, Department of Juvenile Justice doesn't even need to ask. And there's a relative, it's an older Fourth District case, but it reflects, I think in my experience, what happens with the Department of Juvenile Justice is if the Department of Juvenile Justice has a child that they know is going to an adult facility for a long time, there's no point in giving that child intensive services because the child is going to be sent to an adult prison. And so this older Fourth District case talks about the fact that when a child is subject to an adult sentence, what happens for the most part is children are almost always sent to those adult facilities at age 17 and age 18. And it is the rare exception when a child like that is held back. Because the length of these sentences, the child is also going to be sent to a maximum security facility, an adult facility. So this is a child who's going to be housed with the worst of the worst adult offenders by virtue of the transfer. In contrast, at age 14, there was a substantial window of time in which the Department of Juvenile Justice could work to rehabilitate this child. I think he had not quite turned 16 by the time he was admitted to DJJ, and DJJ is authorized to keep that child until he is 21. Deontay was, if this offense had occurred a year and a week earlier, we wouldn't even be having this conversation because the criminal code prohibits the transfer of children under 13 for any sort of transfer into adult court. In addition to the dangers to the minor... But if it happened a year later, we wouldn't be here either because it would be mandatory. That's true, but at that point, Deontay is 15 years old. He's a year older. He's a year more mature. The legislature has made the determination that some children need to be transferred to adult court. And the statutory scheme that the legislature has created is focused primarily on the age of the minor. And so there is this continuum that's available to courts when it comes to transfer. No children under 13 and 14 can be transferred. 13 and 14 year olds, the presumption is that child is supposed to stay in juvenile court unless the trial court finds that it's necessary to transfer the child to adult court based on these statutory factors. It's also important to note that when it comes to the decision of transfer and the importance of considering all of these factors and the trial court being presented with a full picture about what these two options look like, is the notion that the best interests of the minor and the best interests of the public are not divorced when it comes to the transfer of children to adult court. It is not an either-or proposition that if we keep this child in adult court, it will endanger public safety. And as was discussed in the brief, what we know is, what the data shows us, is that transferring children to adult court increases recidivism and keeping children in adult court. And even for serious offenders, when serious children are kept in deep-end facilities, like the Department of Juvenile Justice, for a lengthy period of time as compared to adult prison, those children have lower recidivism rates. Children who were left in a juvenile system have lower recidivism rates. And lower recidivism rates are at the core of public safety. What good is transferring a child to adult court if when he comes out he's in worse shape than you put him in? So in terms of the balance that a court takes into account in terms of the issues of public safety, the juvenile court system provides an option that maintains public safety by putting the minor in a secure facility for a minimum of five years. And if the Department of Juvenile Justice experts have that child and say, we're still not sure that he's ready to be released at 18 or 19, the juvenile justice system has the discretion to keep that child until he's 21. So the adults in this case have a substantial amount of time and resources to be able to rehabilitate children. And that goes directly to the issue of public safety. Well, you use the fact that at 17 they'll ask or at 18 they'll get rid of. What about the fact or whether it's a fact, what's the anecdotal or what's the research show about keeping somebody past 18 when they're under juvenile court jurisdiction? Do they use that additional three years or because of all the budget constraints? Is the reality of it that they are going to get those services or are they going to be released? Here's what we know about. I'm not aware of specific research in Illinois that says for kids who are kept in the system, are they kept until they're 21? But what we do know is that there's an extraordinary undercrowding problem in Department of Juvenile Justice facilities. There are lots and lots of empty beds. So they wouldn't be, the inference would be they're not motivated the same way that sometimes we think the Department of Corrections is. Yes, there is both not a space problem for children and there is extraordinary pressure from the union to represent the guards in those facilities to keep those facilities open. And that's been in the news an extraordinary amount of time in terms of the closing of IYC Murfreesboro and IYC Joliet. That there is a push from both the union that represents the employees to keep facilities open and the fact that there are plenty of beds for kids. And the other thing is that the category of children, very young children, who would be adjudicated delinquent for offenses as serious as murder are very small. So the notion that the system is flooded with lots of 13 and 14 year olds who are convicted of murder is just not the case. How much emphasis should the trial court put on the seriousness of the offense? The statute requires that the trial court put more emphasis on both the seriousness of the offense and the minor's prior juvenile record in this case. In this case his record was extraordinarily minor. It was a criminal damage to property, for throwing rocks, and a trespass case for not leaving school grounds quickly enough. Both of which were so lacking in seriousness that he was put on supervision rather than even being placed on probation. Yes, the court is required to consider the seriousness of the offense. I think the response to that is twofold. If the trial court had had all of the other information that it needed about the appropriate response to the seriousness of that offense, all the court had is this was a serious offense but didn't have any information about and what happens if I keep him in juvenile court? What's the likelihood at age 14 that he's going to outgrow this? That he's going to become more mature? That he's going to be less inclined to engage in this kind of behavior? The other response is too, is that this was not a case where Deontay was the only person responsible for this offense. So yes, it was serious in that it was a victim who died and the group of boys continued on and there was a second beating. But there was no evidence that Deontay was the ringleader. The closest that the court came to that is the fact that Deontay struck the first blow at Newingham at the transfer hearing. The detective who testified said, we have some evidence that he struck the first blow at Newingham and then didn't participate anymore in the beating. The testimony about the fact that he participated in the beating to a greater degree appeared at trial after Malcolm Spence and Brandon White had made their deals and had agreed to testify against Deontay. But at the transfer hearing the detective testified one blow at the Newingham beating. There was some mixed evidence about his participation in the Wilson beating. So at the time the court was presented with, again, a very serious offense. It's why murder and attempt murder, it's why those offenses are eligible for discretionary transfer. Because under some circumstances, transfer might be appropriate. But before courts make that decision, the court has to have all of the information that it needs to make a fully informed decision when it comes to transfer. So what relief were you requesting from us? A reversal and remand for a new transfer hearing in the case. And then at that point, depending on the outcome of the transfer hearing, then proceedings in Macon County could follow any number of paths if he remains in juvenile court. There's the possibility that he would remain to finish his sentence in juvenile court. I note in People v. Clark, for example, what Macon County chose to do. Because People v. Clark, which was the seminal Supreme Court case on why all this evidence needs to be introduced. In Gary Clark, what happened is the case went back to Macon County. There was a new transfer hearing and then Macon County chose to give Gary Clark an entirely new trial. There's an opportunity for plea bargaining at that point when the case goes back for remand. So there are a variety of things that could happen. We're not sure what will happen, but what we're requesting is a remand for a new transfer hearing. I'm just kind of, if you have a new transfer hearing, what evidence is presented to the court? The situation from at the time of the original transfer hearing or the situation now with regard to juvenile facilities and rehabilitation? There is some information about what juvenile facilities look like and what adult facilities look like that are fairly fixed. Adult prisons are just as bad now and just as dangerous for children now as they were at the time of the original transfer hearing. Department of Juvenile Justice facilities are probably, as the Department of Juvenile Justice makes improvements, is probably actually more likely to rehabilitate even than they were two or three years ago because of reforms within the facility. And I think that it is legitimate for that point to consider how Deontay has behaved in the Department of Juvenile Justice since his placement there. Because evidence that Deontay has been behaving well in that facility, that he's been responsive to treatment, goes directly to the fact of whether placement, whether a juvenile sentence is appropriate in the case. So I don't think that there's anything to bar evidence about Deontay's behavior in a juvenile justice system since he's been in a juvenile justice facility. But again, if the court isn't presented with evidence about these two stark contrasts, the court cannot accurately balance the seriousness of the offense over what the appropriate response is. Because that's the focus of a transfer hearing. What's the appropriate response to this child's behavior? How is it that we can rehabilitate this child and keep the public safe? And if we can do both, then that's what the statutory presumption about keeping children age 13 to 14 in juvenile court is designed to do. I see that my time has expired. Just very briefly, I would encourage this court to also remand, if it doesn't remand for a new transfer hearing or a new trial, a new sentencing hearing in this case, in which the trial court correctly weighs youth and mental retardation. Thank you. Ms. Brooks? May I please support, counsel? My name is Anastasia Brooks, and I represent the people of this case. First of all, Clark does not stand for the proposition decided by the defendant with respect to whether the trial court has to have evidence on the record regarding adult penalties. If they were harsh, Clark was a case where they relied, actually, on the extremity of the contrast between incarceration until age 21 and mandatory life in prison without parole, which, of course, after Miller v. Alabama, is no longer an available disposition because that's unconstitutional in violation of the Eighth Amendment. So Clark is a situation where that contrast in penalties can no longer really occur. So the cases cited in the state's brief, which were Beck, Kolakowski, Ollins, and Cooks, are all cases where it's distinguished Clark on the basis of the fact that whether the penalty is even a discretionary, the possibility of life in prison, or 120 years of consecutive sentence, which is effective life in prison. So like in this case, the penalties potentially could have been effectively life in prison and, in fact, actually resulted in the defendant's release date equating to his actuarial life expectancy. It does not matter. Clark's a situation which is distinguishable. And more misreads Clark for a proposition that Clark never actually stated, which is whether the requirement that an adequate balancing requires evidence of adult penalties to be on the record. So in this situation, the judge said, like the case in Beck, I think, where the judge recognizes the seriousness of the charged crime. Here, the judge recognizes the offense could not be more serious. It's murder. Well, the judge thereby is just demonstrating an awareness of the seriousness of the penalties that would attach to the most serious crime in the state. So it's an appropriate situation to apply the rule that judges are presumed to know the law. And there's no evidence in the contrary to show that the judge was unaware of the significant penalties that attach to the charge. There probably ought to be an asterisk, though. The judge is presumed to know the law, but very few of us know anything about sentencing or sentence credit or fines. I mean, that's demonstrated every day on appeals. How many cases do we have where the trial judge imposes a sentence that's not available or imposes a fine that can't be imposed because the guy is not put on probation? Instead, he's sent to the penitentiary. I mean, that inference or presumption doesn't seem to be nearly as strong or it shouldn't be as strong in the sentencing area. And even though we might not be specifically considering the sentencing of him as an adult as the primary issue in the case, there's still an interconnection with that. I mean, I'm not being flippant. I think there are trial judges that don't know what goes on in the juvenile system and they don't know what goes on in the adult system because we've been taught for generations that the DOC does what the hell it wants. They don't really care what judges say on sentencing orders or where the person is going to go or a recommendation may be housed close to their family. If there's a DOC facility, you know, they shouldn't be sent to, you know, 300 miles away. Well, the penalty for murder is not the same as a technicality like whether a fine was imposed. No, I meant that when I said I wasn't being flippant. I meant it as the knowledge and understanding of what can and cannot occur in the courtroom. Sure, but it would be a greater stretch to say that a judge would be unaware that the penalty for murder in adult court could be as long as a defendant's natural life. That's a fair assumption to make versus whether a technical penalty like various fines were correctly calculated. It's a lot. But they could also get confused about consecutive or concurrent and whether or not consecutive was mandatory and were these two separate courses of conduct or was it, you know, one course of conduct and somehow that makes it, yes, they can be consecutive and then they'll get confused with, well, wait a minute, what about that provision regarding sexual assaults and whether or not they occur during the same course of conduct? To suggest that judges don't get confused or don't know sentencing at the moment they're deciding guilt or not guilt and then, well, I really got to hammer this guy or I'm going to be generous to him. They just don't. That's demonstrated in almost every appeal. There's some sentencing issue. But in this case, the mandatory minimum was only 20 years in adult court plus six at 85% mandatory consecutive. So it's not a situation like in Clark where there's such a dramatic disconnect between the penalties available in the juvenile system and the penalty available in the adult system. So it doesn't make consideration of the non-statutory factor as critical. Critical is the word that the Clark court used. So, therefore, if it's not as critical, it's not as essential to have that in order to satisfy the defendant's rights to a due process and a fair hearing or transfer. So it's not as critical because there's not that same disconnect. And so if cases like Beck, Kalikowski, Owens, and Cook were to be followed, then the defendant would have this court determine that those cases are wrongly decided and instead that Moore had correctly read Clark as establishing a fair hearing. In this case, it's also distinguishable from cases like Moore and Clark where there is detailed testimony from a probation officer about possible dispositional alternatives, including residential treatment or other sorts of services that would be available. Weren't those based upon if probation was granted, though? And there was no opportunity here for probation. The state's response to that is this case was being considered at a transfer hearing stage, which is before any trial would be held. And, of course, it's always a possibility that the defendant would either be not convicted of first-degree murder at a trial or would have some sort of guilty plea arrangement with the state, which would ensure that the largest conviction would be either something less than first-degree murder because, like, say, it pled down to something less or just simply attempted first-degree murder. Either S. Newingham, which is possible to commit an attempt crime even though that the crime is actually complete, they could decide to plead that down to attempt or just simply attempt as to Wilson. Those are possible dispositions, and the judge needed that evidence of what could be given in terms of probation services in order to get that full picture that the defendant talks about. So it's not a situation where just simply because the defendant was charged with first-degree murder that probation at the transfer hearing stage was irrelevant, is the word the defense used. It's not irrelevant at the transfer stage what sort of alternatives are available for probation. And with respect to whether there were any particular advantages, particularly to the juvenile justice system, to not transferring with respect to if it would end up to be a first-degree murder conviction and DOJJ sentence to start, this court in Liggett had decided that discussing this very factor that the advantages of treatment facilities particularly available to the juvenile justice system, this court had remarked in Liggett that, well, it doesn't matter because the defendant is going to, if sentenced to prison, is going to end up in a juvenile facility at their age. So if this court had dismissed that factor on the basis of saying that, well, they're going to end up in the same prison whether they're transferred or not, that shows that the defendant's point is not well taken. And you say that's the Liggett case? Yes, Your Honor. I cited that. The 1980 case. It was the 1980 case, the same statute. The statute's been changed over time, but there's still the wording of this, whether facilities are, quote, particularly available. And this court said, if commitment to the Department of Corrections was to the ultimate disposition of the minor, the availability of facilities for real bluetotion would be the same regardless of whether he had been dealt with by juvenile or criminal proceedings. So essentially that same point still applies today. I mean, this defendant would have to ask this court to overrule or not follow its prior decision in Liggett in order to decide that there was an unfair hearing because of lack of evidence as to advantages of treatment particularly available in juvenile justice. I don't think I understand the context of that Liggett quote. Well, this court was discussing the factors that were in the statute. Right. And with respect to this particularly available in juvenile justice, this court had referred to the fact that if the ultimate disposition were to be prison, which at the transfer stage we don't know what the disposition would be, but if it would be prison, then it's going to be the same programs available to the minor, essentially, because they're going to be in the same location. And with the defendant's arguments here, which is, well, if they know he's going to be in an adult sentence and end up transferring anyway, the defendant doesn't offer anything in the brief that refers to the record or have this court take judicial notice of something to support the defendant's claims that somehow the DOJJ is just going to simply not give any services to minors who are sentenced to adult court. But wouldn't there be a difference in the minor's perception if he's looking at two or three years in a juvenile justice facility with the certainty that he's then going to be transferred to adult prison? What's his motivation to do anything? You know, the positive nature. On the other hand, if he's sentenced to a juvenile justice facility with the aim towards rehabilitation, he may have some inclination to participate and to turn his life around. Because he would be getting out by age 21. But if the judge makes that determination, what the defendant decides to do with his life and his programs afterwards is not relevant because the decision has already been made. He's either going to be sentenced to a minimum of 20 years or even greater, which is what happened in this case, or he's going to have to be released by age 21 because the judge decided not to transfer. So what the defendant decides to do afterwards doesn't affect what the judge decides at the point of the transfer hearing. We'll accept it. Justice Afton is suggesting that there is a more meaningful opportunity and motivation to take advantage of those rehabilitative services if you know those could lead either to early release or will lead to release at 21 and you will have achieved something. Versus, why should I spin my wheels when I know they're going to try to discretionary get rid of me and go over to adult, to DOC, because I got convicted as an adult? Well, the question is whether the prison term up to age 21, DOJJ, is going to rehabilitate the minor or not in light of the seriousness of your crime. And if the protection of the public requires that they be incarcerated for longer, then that's an appropriate transfer decision to make. But that's not an answer to what either of us said. Is the opportunity for rehabilitation actually magnified, made greater, by considering that the individual will have five years of services if those are released, which we don't know because that's absent from the record, than automatically leaving them there for a couple of years because that's what the law requires and then sending them to adult prison where we've been quoted in the Brandeis brief style that statistics tell us that recidivism rates go up. If rehabilitation is a more meaningful possibility by five years in the DOJ, why isn't that something worth considering for the trial court to talk about? For the trial court to talk about? To explain how he reached the conclusion that it just wouldn't work. It won't work in DOJ. There's nothing over there for him. Well, the judge did decide the public needed protection for longer than the prison term. That would be available. So no matter what services were available, that decision trumps any other factor? It seemed that would be the case. Well, there are cases that actually say that, aren't there? Well, the fact that there was no actual evidence with respect to DOJ programming is essentially the complaint that the defendant is making. But it doesn't seem like it would have mattered under the circumstances because the judge was going to decide that, that it would be the seriousness of the crime and other factors that the judge was going to decide. So why does the statute require the trial court to consider those? The statute only requires the judge to consider the programs and facilities particularly available to the juvenile justice system. And DOJJ is not particularly available. So it's the way the statute is written. If the legislature wanted to require evidence of DOJJ programming to be admitted, they would have written the statute differently. All right. Is that what the Clark case says, though? The Clark case doesn't say that. I'm just reading the plain language of the statute. You're going to have to help me with that again. Okay. I'll have to go to the court of the statute. I'll have a minute to write this. It says this would be factor sub four, the advantages of treatment within the juvenile justice system, including whether there are facilities or programs or both, particularly available in the juvenile system. So DOJJ is not a disposition that's particularly available because it's also part of the adult sentence because the minor is going to end up there whether they're sentenced as an adult or a minor. Okay. So the evidence of the juvenile programs facilities that were available in probation, that covers that part of the statute because that's what the statute's getting at. So he's going to get those services anyway, whatever they are, for a limited period, so who cares? That's not what part of the statute's getting at. The statute is getting to advantages of treatment within juvenile justice. The advantages to treatment would include the length of the treatment. The length of treatment? Well, yeah. If you're sentenced to DGOJ, you get five years. In this instance, it would be five years of services. That ain't going to happen. He's an adult, right? He's going to get transferred. That's true. He'd have to be transferred. He'd have to be transferred by age. And he might even be transferred a year earlier if it was with court approval. So isn't that a disparity between the services? And the disparity is between the services that are available for five years in juvenile versus the possibility that you might only get them for one as an adult. Well, the state's argument is that the DOJJ programming is not an advantage of treatment within the juvenile justice system, particularly available to the juvenile justice system because it's not particularly available. So that's essentially the state's response to that issue. Well, getting back to the Clark case, what is the state's argument concerning this statement? Where the record fails to support the juvenile judge's recitation that all statutory factors were considered, there is an abuse of discretion. Isn't that what we have here? No, Your Honor, because all statutory factors were considered, and that's part of the evidence. Rehabilitation was considered by the trial court. I don't have the record site for that. I don't have a quote of the judge's findings, but in front of me. But the defendant's argument is that this factor of advantages of the treatment in facilities in the juvenile justice system, that argument's not well taken because there was evidence of that factor, and that's the statutory factor which the defendant relies on is not being met, and the non-statutory factor is not important. There are no advantages of treatment within the juvenile justice system, as the juvenile system is not capable of dealing with such a serious offender. What evidence in the record is there of that? That's the conclusion he reaches. Those are his words. Right, Your Honor. That's based on the seriousness of the offense primarily. Well, then no one who's ever convicted of that offense could be considered because they'd be a serious offender. The seriousness of the facts and the brutality of the case, not just the fact that it was first-degree murder. Was there testimony about the degree of involvement in each assault? In the transfer hearing? Mm-hmm. I'm not sure of that. Well, then how could the trial court make that statement? I mean, other than that he was charged with first-degree murder, but, you know, there are different gradations of culpability within first-degree murder. Was there any analysis of that? I'm not sure of the answer to that. In my last few minutes, may I speak? Very briefly, I just wanted to say with respect to the sentencing, here the trial court did weigh the brutality of the attacks in saying that it outweighed the mitigation from the defendant's age and mental deficiencies. So really what the defendant is claiming is that the trial court improperly weighed those factors, and that is subject to abuse discretionary review. And I also would like to focus on the defendant's conduct while in detention as well as the fact the report showed that the defendant was dangerous to society and was showing no willingness to change. So for that reason, this court should affirm the judgment. Thank you. Thank you. The bottom, Ms. Boyle? Very briefly, if Liggett does indeed say that there is no difference between juvenile facilities and adult facilities, then I would ask this court to prove Liggett was wrongly decided. I don't think that's what Liggett means in terms of the language of the statute. Again, as we discussed. Did you say Liggett was wrongly decided? If what Liggett says is a child who is transferred to adult court and is then placed in a juvenile facility until he turns 17 or 18 and then is sent to the Department of Juvenile Justice, if what Liggett says, as the state represents Liggett says, that that means that there are no particularized advantages to a placement in DJJ. You are aware that the Clark case, the Supreme Court, cited Liggett favorably. And I think that my response is Clark didn't cite Liggett for the proposition that there's no difference between juvenile and adult facilities. In fact, Clark did exactly the opposite of that. What Clark said is there has to be evidence of what happens to a child in adult court and what happens to an adult in criminal court. And the state seeks to take some language in Liggett and say, that means there's nothing particularly special about keeping a kid in juvenile court and giving a kid the treatment and services and rehabilitation that's available. The Supreme Court described Liggett as an extensive penalty. Which this did not occur. And again, I have no argument with Liggett in terms of how Liggett was decided. My argument is with the notion that what Liggett says is there's nothing special about juvenile rehabilitative services. And I think that that is wrong. Just so I understand this. You're asking us to send it back. There's a new hearing. Hypothetically the trial court says no. We got the additional evidence. My decision is still to transfer to adult court. Then there has to be a new trial, correct? I think at this point what happens is, here's what I can say. That is what happened in Clark. In Clark, Macon County gave Gary Clark a new trial afterwards. And the reason why I'm a little hesitant to respond is that it's not an issue that the state and I briefed about what would happen afterwards, what we've asked for on Deontay's behalf is a new transfer hearing. And then what happens once the case goes back for a transfer hearing, there are a variety of options the attorneys can engage in. Well, if there's no evidence available for the state to proceed to a second trial, does that make any difference? Should this court think about that? Or is that something the trial court would take into consideration in deciding whether to transfer? That the state would have a more difficult time proving the case? Well, I mean, I would presume that the state could present the case again. But evidence does go stale. People die. Witnesses aren't available. I mean, it's a possibility that it would be difficult, if not impossible, for the state to proceed to a second trial. So that would be something I presume you're arguing the trial court would take into consideration before making a decision to transfer. How easy it will be for the state to prove Deontay guilty in a new trial isn't one of the statutory factors. What the transfer hearing focuses on are those statutory factors. And those statutory factors go to, is our response as adults in this case more appropriate to put this child in the delinquency system? Or is the approach the more appropriate response to put him in an adult system? And the difficulty of the state's, the ability of the state to prove its case is not relevant to that particular inquiry. And I wanted to just comment briefly, Your Honor, about the notion that trial judges don't necessarily know the law. And I wish I had thought of that argument myself. But as I was thinking about this, I think that the problem with trial courts perhaps not knowing the appropriate ranges is particularly aggravated in juvenile proceedings. Because in this case, and it is a typical practice, that the transfer hearing takes place in juvenile court. Because at that point, the delinquency petition has been filed. It is a wholly delinquent proceeding. And in this case, the transfer hearing was made by a juvenile court judge. So there is even sort of less of, I suppose, a connection between a judge who practices in juvenile court and the notion that that judge necessarily knows all of the appropriate sentencing ranges and ins and outs of adult sentencing. With that, I respectfully request that this Court send Deontay back to the transfer hearing. Thank you, Counsel. We'll take this matter under advisement. We stand in recess until the readiness of the next case.